UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| JAMES B. SIMMONS, and | ) | Case No. 6:11-bk-09983-KSJ |
| CYNTHIA C. SIMMONS | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MEMORANDUM OPINION APPROVING CHAPTER 7
TRUSTEE'S PROPOSED COMPROMISE OF CONTROVERSY**

The Chapter 7 Trustee, Carla Musselman, seeks Court approval of a $100,000 settlement for a "bad faith" insurance claim asserted under § 624.155 of the Florida Statutes ("Bad Faith Claim") against State Farm Insurance Company ("State Farm").[1] The Court preliminarily concluded[2] that the Trustee lacked the authority to settle the Bad Faith Claim because an element of the claim accrued after the Debtors filed their bankruptcy petition, and, therefore, it was not property of the estate. The Court is persuaded by the parties' supplemental briefing[3] that the claim arose pre-petition and is property of the estate. The Court also finds the Trustee's proposed settlement reasonable and will approve the compromise.

On February 15, 2010, the Debtors' home was damaged by a sinkhole on their property.[4] On March 17, 2010, the Debtors submitted an insurance claim to State Farm for the sinkhole damage. State Farm made an initial payment of about $12,000 to the Debtors for the sinkhole

---

[1] Doc. No. 161.
[2] Doc. No. 178.
[3] Doc. Nos. 180, 181.
[4] Doc. No. 181, Exhibit A (letter from Debtor's pre-petition attorney stating that the "sinkhole loss" occurred on February 15, 2010).

claim. Debtors, believing this amount was too small, hired an attorney to get more money from State Farm under their home insurance policy.[5]

On September 27, 2010, the Debtors, through their attorney, sent State Farm the "Civil Remedy Notice of Insurer Violation" required by § 624.155 of the Florida Statutes, outlining alleged statutory violations and allowing State Farm 60 days to cure any potential violations.[6] State Farm reinspected the property and increased their payment on the underlying sinkhole claim by about $27,000.

After the supplemental payment of $27,000, but prior to the expiration of the 60-day cure period, State Farm requested a neutral evaluation under § 627.7074 of the Florida Statutes, which "provides a substantive right of parties to have a neutral evaluator review the claim and render a nonbinding report before the matter is adjudicated by a court."[7] The neutral evaluator issued her report on February 7, 2011, and nearly a week later, State Farm agreed in writing to the recommendations of the neutral evaluator. Although not entirely clear, the Court surmises that the Debtors did not agree to the findings of the neutral evaluator, because the Debtors later obtained an independent appraisal of the damages.[8]

Debtors filed their Chapter 13 petition initiating this bankruptcy case on June 20, 2011.[9] The only significant post-petition event, for the purposes of deciding whether the Bad Faith Claim is property of the estate, is an appraisal requested by the Debtors in October 2011. The appraisal, completed on January 27, 2012, determined the amount of the Debtors' claim to be

---

[5] *See* Doc. No. 181, Exhibit A (demand letter from attorney on the Simmons' behalf relating to the underlying coverage claim).

[6] Civil Remedy Notice, Doc. No. 181, Exhibit B (included as attachment to attorney's letter). *See* Fla. Stat. § 624.155(3). *Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1283 (Fla. 2000) (holding that what has to be " 'cured' is the non-payment of the contractual amount due the insured," i.e. "the amount owed pursuant to the express terms and conditions of the policy after all of the conditions precedent of the insurance policy in respect to payment are fulfilled.").

[7] *Morejon v. Am. Sec. Ins. Co.*, 829 F. Supp. 2d 1258, 1260 (M.D. Fla. 2011) (explaining generally the neutral evaluation process).

[8] The Debtors' appraisal likely was a contractual right afforded to the insured under their insurance contract. *See generally United Cmty. Ins. Co. v. Lewis*, 642 So. 2d 59, 59 (Fla. 3rd DCA 1994).

[9] Doc. No. 1.

$650,699.02 and obligated State Farm to pay that amount.[10] Issues arose during the Chapter 13 case as to whether State Farm should pay these monies to the mortgagor, Bank of America, or directly to the Debtors for repairs on the home.[11] Debtors and the lender eventually agreed the lender could keep $450,000 in full satisfaction of the mortgage, and the Debtors would receive the $200,699.02.[12]

On June 7, 2012, the Debtors amended their Schedule B to add the Bad Faith Claim,[13] and months later, the Debtors sought approval to employ special counsel to pursue the Bad Faith Claim.[14] After resolving the issues with their lender, the Debtors converted their case to a Chapter 7, and Ms. Musselman was appointed as the Chapter 7 Trustee.[15]

The Trustee pursued the Bad Faith Claim and eventually reached the settlement with State Farm presently before the Court for review.[16] Under the settlement, State Farm agrees to pay $100,000 to the Trustee in full settlement of the Bad Faith Claim and any other claims relating to the subject property, insurance claim, or insurance policy.[17] The Court first will evaluate whether this settlement is fair and reasonable before turning to the more difficult issue of whether the claim is property of the estate, and therefore subject to the Trustee's power to settle.

---

[10] Doc. No. 68, Exhibit A.
[11] *See* Doc. No. 68 & 76 (order directing payment).
[12] Doc. Nos. 131, 134.
[13] Doc. No. 70.
[14] (Doc. No. 113.) The Court entered an order approving attorney Matthew Danahy's appointment as special counsel to pursue the Bad Faith Claim on March 21, 2013. (Doc. No. 121.)
[15] (Doc. Nos. 139, 140.) After her appointment, the Trustee sought to employ Mr. Danahy, the same attorney as special counsel that represented the Debtors in pursuing the Bad Faith Claim in their Chapter 13. (Doc. No. 148.) Debtors did not object, and the Court approved Mr. Danahy's appointment. (Doc. No. 153.)
[16] Doc. Nos. 161, 163. *See also* Fed. R. Bankr. P. 9019.
[17] (Settlement Agreement, Doc. No. 163, Exhibit A.) The settlement agreement provides that in return for the $100,000 payment, the Trustee will release State Farm from any claim "related to the property located at 6729 S.E. 99th Place, Bellview, Florida; insurance claim number 59-D281-402 and/or policy number 80-BD-A369-2, including claims of 'bad faith,' breach of contract, statutory violation, costs and attorney fees." (Doc. No. 164, Exhibit A.)

## The Settlement Is Fair and Reasonable

Debtors object to the Trustee's settlement with State Farm on two main grounds: (1) the Bad Faith Claim should be exempt under the Debtors' homestead exemption because the recovery should be applied to fixing the sinkhole damage to the Debtors' home; and (2) the settlement amount was too low, i.e., not fair and reasonable.

Debtors' first objection is unfounded. Debtors proffer no reasoning or case law that would support converting a bad faith claim recovery under § 624.155 of the Florida Statutes into a homestead exemption. Debtors (or their lender) already received the $650,000 settlement intended to fully repair the sinkhole damage to their home. A plaintiff bringing a bad faith claim "essentially seek[s] delay damages for the period between when the claim was paid and when he maintains it should have been paid."[18] Thus, a bad faith claim is separate from the underlying property damage claim.[19] The Bad Faith Claim is not exempt under the Debtors' homestead exemption.[20]

Debtors' next argue that the settlement is not fair and reasonable. Federal Rule of Bankruptcy Procedure 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."[21] As a general matter, the law favors compromise over litigation.[22] Consistent with this policy, bankruptcy courts have broad discretion to approve compromises under Rule 9019.[23] When deciding whether to approve a compromise, bankruptcy courts must determine whether the proposed compromise is fair and equitable and should approve the compromise unless the compromise "falls below the lowest

---

[18] *Hunt v. State Farm Florida Ins. Co.*, 112 So. 3d 547, 551 (Fla. Dist. Ct. App. 2013).

[19] A claim for bad faith is "separate and independent of the claim arising from the contractual obligation to perform." *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991).

[20] As State Farm notes, the Debtors' schedules did not claim the Bad Faith Claim as exempt and never amended their schedules to reflect the claimed exemption. (Doc. No. 175.)

[21] Fed. R. Bankr. P. 9019(a).

[22] *In re Bicoastal Corp.,* 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993).

[23] *Id.* (citing *In re Charter Co.*, 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987)); *In re Kay*, 223 B.R. 816, 819 (Bankr. M.D. Fla. 1998) (quoting *Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599, 602-03 (5th Cir.1980)).

point in the range of reasonableness."[24]

The Eleventh Circuit in *In re Justice Oaks, II, Ltd.*, established four factors for a bankruptcy court to consider when determining whether a compromise falls within the range of reasonableness: (1) the probability of success in the litigation; (2) the difficulties, if any, to be encountered in collection; (3) the complexity of the litigation, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of the creditors.[25]

The first factor requires bankruptcy courts to weigh the certainty of the settlement against the risks of litigation, including the effect an adverse ruling would have upon the estate.[26] Damages for a bad faith claim are limited to actual damages caused by the delay in payment on the underlying insurance settlement.[27] Special counsel for the Trustee estimated the total amount of damages to be $124,000.[28] The settlement is for $100,000. Debtors have introduced no evidence to discredit the Trustee's evaluation. Victory on the Debtors' claim moreover is far from certain.[29] The settlement is substantial, roughly 80% of the total amount sought, and the risk of litigation and a lesser recovery also is substantial. The certainty of settlement outweighs the risk of further litigation.

The second factor, difficulty of collection, is a non-issue in this case. State Farm is a

---

[24] *Bicoastal Corp.*, 164 B.R. at 1016 (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 613 (2d Cir. 1983), *cert. denied* 464 U.S. 822, 104 S. Ct. 89, 78 L. Ed. 2d 97 (1983)); *In re Kay*, 223 B.R. at 819.

[25] *Wallis v. Justice Oaks II, Ltd.* (*In re Justice Oaks II, Ltd.*), 898 F.2d 1544, 1549 (11th Cir. 1990), *cert. denied* 498 U.S. 959, 111 S. Ct. 387, 112 L. Ed. 2d 398 (1990).

[26] *In re Bicoastal Corp.*, 164 B.R. at 1016 (citing *In re Holywell Corp.,* 93 B.R. 291 (Bankr. S. D. Fla. 1988); *Florida Trailer & Equipment Co. v. Deal,* 284 F.2d 567 (5th Cir. 1960)).

[27] *Hunt v. State Farm Florida Ins. Co.*, 112 So. 3d 547, 551 (Fla. 2d DCA 2013).

[28] Doc. No. 161 at 5.

[29] "[M]ere inability to agree to a dollar amount does not prove bad faith on the part of the insurer. So long as the insurer exercised good faith in attempting to adjust the claim, the insurer will not be held to have violated § 624.155." *316, Inc. v. Maryland Cas. Co.*, 625 F. Supp. 2d 1187, 1195 (N.D. Fla. 2008). For one, the Court observes that the Debtors' delay in requesting the appraisal could raise mitigation issues. Also, the Civil Remedy Notice arguably does not describe State Farm's allegedly bad faith conduct in detail as the statute requires. (Doc. No. 181, Exhibit B.) *See* Fla. Stat. § 624.155(3)(b) (2014); *316, Inc. v. Maryland Cas. Co.*, 625 F. Supp. 2d 1187, 1194 (N.D. Fla. 2008) ("Plaintiff's Civil Remedy Notice was written in such general terms that it gave no actual notice of the specific actions that Defendant could have undertaken to cure it. . . . Based on Plaintiff's failure to provide any facts [in the Civil Remedy Notice] on how Defendant could avoid a bad-faith lawsuit other than for Defendant to pay the policy limits, I cannot find fault with the Defendant seeking an appraisal under the terms of the insurance contract.").

national company and can pay any reasonable judgment assessed against it. The third factor, cost of litigation, delay, and inconvenience of the litigation also weighs in favor of approving the settlement. Litigation is costly. Moreover, trying this claim necessarily would involve the testimony and cooperation of the Debtors, which is often challenging for a Chapter 7 trustee when a debtor has no direct interest in the outcome of the case, despite their statutory duty.[30] The time, expense, and inconvenience of prolonged litigation weigh in favor of approving the settlement.

The last factor, the interests of creditors, also weighs in favor of settlement. No creditor has opposed the settlement. Creditors will receive a distribution much quicker with the settlement than by further litigation. They also could recover much less, and the settlement avoids any risk associated with further litigation.

The Trustee's proposed settlement with State Farm is fair and reasonable. But, because the Trustee only has he power to settle claims that are property of the estate, the Court must now turn to its original concern: whether the Bad Faith Claim is property of the estate.

## The Bad Faith Claim is Property of the Estate

The Court preliminarily concluded that the Bad Faith Claim was not property of the estate because the last element of the cause of action—resolution of the underlying insurance benefits dispute in the insured's favor—accrued post-petition.[31] Both the Trustee and State Farm concede that the last element indeed accrued post-petition, but argue the Bad Faith Claim is still so closely tied with pre-bankruptcy events to deem it estate property. After considering the arguments advanced by the Trustee and State Farm,[32] the Court determines that the Bad Faith Claim is property of the estate because all conduct giving rise to the claim occurred pre-petition.

---

[30] *See* 11 U.S.C. § 521(3).

[31] Doc. No. 178.

[32] The Trustee and State Farm filed supplemental memorandums of law on the property of the estate issue. (Doc. Nos. 180, 181.) Debtors did not file any additional legal authority and apparently do not contest the conclusion that the Bad Faith Claim is property of the estate.

The Court converted the Debtors' bankruptcy case from a Chapter 13 to a Chapter 7 at their request.[33] Under § 348(f)(1)(A), "[p]roperty of the estate in a case converted to Chapter 7 from Chapter 13 is comprised of property of the estate as of the date the petition was filed that remains in the possession or control of the debtor on the date of conversion."[34] Put differently, property of the estate in the Chapter 7 case "is determined according to the filing date of the original Chapter 13 petition."[35] Section 541(a)(1), in turn, defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case."[36] Because a debtor has a legal or equitable interest in pre-petition causes of action, they are included within the penumbra of "property of the estate".[37] Thus, the main issue is whether the Debtors had a "legal or equitable interest" in the Bad Faith Claim when they filed their Chapter 13 petition on June 30, 2011.

State law determines whether a claim existed as of the date of filing the bankruptcy petition.[38] The Court must look to the underlying elements of a bad faith cause of action under § 624.155 of the Florida Statutes to determine the extent of the Debtors' interest in the Bad Faith Claim at the time of filing their bankruptcy case.

Section 624.155 of the Florida Statutes creates a cause of action insureds can pursue against their insurer for "[n]ot attempting in good faith to settle claims when, under all the

---

[33] (Doc. No. 140.) Debtors now seek to reconvert to a Chapter 13 in an apparent attempt to reassert control over the Bad Faith Claim. (*See* Doc. Nos. 167, 168.) In a separate order, entered concurrently, the Court denies this request to reconvert.

[34] *In re John*, 352 B.R. 895, 899 (Bankr. N.D. Fla. 2006); *see* 11 U.S.C. § 348(f)(1)(A).

[35] *Id.* (quoting *In re Stamm*, 222 F. 3d 216, 218 (5th Cir. 2000)).

[36] 11 U.S.C. § 541(a)(1).

[37] *In re Witko*, 374 F.3d 1040, 1043 (11th Cir. 2004).

[38] In *Witko*, the Eleventh Circuit clarified which law to apply when determining whether a claim is property of the estate, stating that "federal law determines whether an interest is property of the bankruptcy estate." *Witko*, 364 F. 3d 1043 (citing *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S. Ct. 511, 515, 15 L. Ed. 2d 428 (1966)). But, the court went on to explain "property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979)). Ultimately, the court held that "[s]tate law thus controls [the debtor's] legal malpractice cause of action and determines whether that claim existed at the time [the debtor] filed his bankruptcy petition." *Id.*

circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests."[39] Section 624.155(1)(b) "is correctly read to authorize a civil remedy for extra contractual damages if a first-party insurer does not pay the contractual amount due the insured after all the policy conditions have been fulfilled within sixty days after a valid notice has been filed under" § 624.155(2)(a).[40] "[A] claim for bad faith pursuant to section 624.155(1)(b)(1) is founded upon the obligation of the insurer to pay when all conditions under the policy would require an insurer exercising good faith and fair dealing towards its insured to pay."[41]

A plaintiff must prove three elements to prevail on a statutory bad faith claim under § 624.155(1)(b)(1): (1) bad faith conduct on the part of the insurer; (2) compliance with § 624.155(3)'s Civil Remedy Notice requirements, and (3) resolution of the underlying insurance benefits dispute in the insured's favor.[42] The first element, the insurer's bad faith conduct, amounts to "knowledge and/or delay on the insurance company's part," i.e., failure to pay "[a]t the point in time when liability has become reasonably clear."[43]   The second element, compliance with § 624.155(3)'s Civil Remedy Notice requirements, is a statutory condition precedent to bringing suit intended to provide notice to the insurer and the Florida Department of

---

[39] Fla. Stat. § 624.155(1)(b)(1) (2014).

[40] *Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1283 (Fla. 2000).

[41] *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000).

[42] *See 316, Inc. v. Maryland Cas. Co.*, 625 F. Supp. 2d 1187, 1192 (N.D. Fla. 2008) (discussing bad faith conduct); *Vanguard Fire & Cas. Co. v. Golmon*, 955 So. 2d 591, 594 (Fla. 1st DCA 2006); *Cammarata v. State Farm Florida Ins. Co.*, — So. 3d —, No. 4D13-185, 2014 WL 4327948, at *6 (Fla. 4th DCA Sept. 3, 2014) ("[D]etermination of the existence of liability and the extent of the insured's damages are the conditions precedent to a bad faith action, along with the notice requirement.").

[43] *316, Inc. v. Maryland Cas. Co.*, 625 F. Supp. 2d 1187, 1192 (N.D. Fla. 2008). "The Florida Supreme Court has stated that the factors to be considered in a first-party bad faith action include: (1) 'efforts or measures taken by the insurer to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to the insureds;' (2) 'the substance of the coverage dispute or the weight of legal authority on the coverage issue;' and (3) 'the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage.'" *Heritage Corp. of S. Florida v. Nat'l Union Fire Ins. Co. of Pittsburg, PA.*, 255 F. App'x 478, 482 (11th Cir. 2007) (citing *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 63 (Fla. 1995)).

Insurance.[44] The first two elements of the Debtors' Bad Faith Claim—assuming for the sake of

analysis that bad faith conduct existed and that the Civil Remedy Notice sent by the Debtors was

sufficient—clearly accrued pre-petition.

To satisfy the third element, "an insured's underlying first-party action for insurance

benefits against the insurer necessarily must be resolved favorably to the insured before the cause

of action for bad faith in settlement negotiations can accrue."[45] That is, "the plaintiff must allege

that there has been a determination of the existence of liability on the part of the insurer and the

extent of the plaintiff's damages."[46] The appraisal, completed post-petition on January 27, 2012,

satisfies the determination of liability element.[47] Thus, this last element accrued post-petition.

Both the Trustee and State Farm argue that this element's post-petition accrual is not

determinative of whether the Bad Faith Claim is estate property. Rather, they argue that although

one element of the claim accrued post-petition, the claim is "sufficiently rooted in the [Debtors']

pre-bankruptcy past" that it must be considered a pre-petition claim.[48] In other words, the

Debtors had a "legal or equitable interest" in the Bad Faith Claim on the petition date, even if the

claim was not yet ripe for resolution.

The Court agrees for two reasons. First, State Farm's alleged bad faith conduct appears to

have occurred pre-petition (if at all). Debtors issued the Civil Remedy Notice pre-petition, on

September 27, 2010.[49] Assuming, for the sake of argument, that the Civil Remedy Notice was

sufficient to put State Farm on notice of the bad faith claim, the notice was required to identify

---

[44] *See* Fla. Stat. § 624.155(3) (2014). The Civil Remedy Notice also is intended to allow the insurer opportunity to cure. *See* Fla. Stat. § 624.155(3)(d) (2014).

[45] *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991).

[46] *Heritage Corp.*, 255 Fed. App'x. at 481.

[47] *Hunt v. State Farm Fla. Ins. Co.*, 112 So. 3d 547, 549 (Fla. 2d DCA 2013).

[48] This oft-quoted language comes from *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S. Ct. 511, 515, 15 L. Ed. 2d 428 (1966), a case decided under the old Bankruptcy Act. In that case, the Supreme Court stated that a "loss-carryback refund" was "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under s 70a(5)." *Segal*, 382 U.S. at 379, 86 S. Ct. at 515.

[49] Doc. No. 181, Exhibit B (attached to attorney letter).

all conduct the Debtors alleged constituted bad faith to allow State Farm to cure within the 60-day period.[50] As one court put it, the requirement that the Civil Remedy Notice allege the "facts and circumstances" giving rise to the bad faith claim "leads to the logical conclusion that the conduct constituting the alleged bad faith must have occurred prior to the plaintiff filing the [Civil Remedy Notice]."[51] The Court concludes that State Farm's alleged bad faith conduct, if it indeed existed, must have occurred pre-petition, prior to the Civil Remedy Notice.

Second, the Court finds that the element that accrued post-petition—determination of liability—is distinguishable from the post-petition element in *In re Witko*.[52] In *Witko*, the Eleventh Circuit considered whether a legal malpractice claim stemming from the debtor's extra-bankruptcy alimony proceeding belonged to the estate or the debtor.[53] Although some of the attorney's allegedly negligent conduct may have occurred pre-petition, the last element of the legal malpractice claim—"the attorney's negligence was the proximate cause of loss to the client"—occurred nearly four months after debtor filed his petition.[54] Because the debtor's legal malpractice cause of action did not exist until he lost in the alimony proceeding, post-petition, the court determined the claim belonged to the debtor.[55]

Several factors distinguish *Witko* from the present case, most importantly the type of claim. The court in *Witko* emphasized that "[t]he machinations of legal malpractice, especially the element requiring the conclusion of judicial proceedings, distinguish legal malpractice

---

[50] Among other requirements, the statute provides that the Civil Remedy Notice "shall state with specificity . . . the statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated," and "the facts and circumstances giving rise to the violation." Fla. Stat. § 624.155(3)(b) (2014).  "[T]he purpose of the civil remedy notice is to give the insurer one last chance to settle a claim with its insured and avoid unnecessary bad faith litigation—not to give the insured a right of action to proceed against the insurer even after the insured's claim has been paid or resolved." *Lane v. Westfield Ins. Co.*, 862 So. 2d 774, 779 (Fla. 5th DCA 2003).
[51] *Alexander v. Gov't Employees Ins. Co.*, 3:10-CV-287-J-32JRK, 2012 WL 5382051 (M.D. Fla. Nov. 1, 2012).
[52] *In re Witko*, 374 F.3d 1040, 1043 (11th Cir. 2004).
[53] *Id.*
[54] *Id.* at 1043-44.
[55] *Id.* at 1044.

actions from virtually all other tort claims."[56] Because the court specifically identified the cause

of action's uniqueness, the Court declines to apply *Witko's* holding as a bright-line rule. The

mere fact that an element accrued post-petition is not dispositive of whether a claim is property

of the estate; the significance of the element in relation to all other facts and circumstances

should be considered.[57] Additionally, in *Witko*, the "malpractice cause of action was unknown,

not even rising to a hope" until the post-petition element accrued.[58] Here, State Farm's alleged

bad faith conduct occurred pre-petition and the Debtors, represented by an attorney in their

coverage dispute with State Farm, knew or should have known that they had potential to pursue a

bad faith cause of action.

At the time the petition was filed, the Debtors had a "legal or equitable interest" in the

Bad Faith Claim. State Farm's alleged bad faith conduct must have occurred pre-petition because

the Civil Remedy Notice was issued pre-petition. The only post-petition event was the

determination of the amount of the liability, a prerequisite to suit that was intended to merely

show that the insured had a valid claim.[59] The post-petition accrual of a single element of a cause

of action does not automatically shift a claim into post-petition territory. The Court finds that the

Bad Faith Claim is property of the estate and thus subject to settlement by the Trustee.

---

[56] *Id.*

[57] *See e.g.*, *In re Patterson*, 08-3025, 2008 WL 2276961 (Bankr. N.D. Ohio June 3, 2008) ("Under *Segal*, therefore, whether a cause of action has accrued, while potentially affecting the time at which a trustee could bring a suit, does not control whether a cause of action falls with the broad reach of estate property under § 541(a). Rather, so long as the events giving rise to the claim are sufficiently rooted in the pre-bankruptcy past, the cause of action becomes included in the debtor's bankruptcy estate."); *In re Jenkins*, 410 B.R. 182, 192 (Bankr. W.D. Va. 2008) (holding that merely because of the damage elements of a tort claim culminated post-petition does not mean the property doesn't belong to the estate; the claim was "sufficiently rooted in pre-petition conduct"), *In re Strada Design Associates, Inc.*, 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005) ("Although the accrual date for state law purposes is important, it is not always critical in deciding whether a cause of action will be 'property of the estate.' ").

[58] *Witko*, 374 F.3d at 1044.

[59] *See Heritage Corp. of S. Florida v. Nat'l Union Fire Ins. Co. of Pittsburg, PA.*, 255 F. App'x 478, 481 (11th Cir. 2007) ("[T]he purpose of the allegation concerning a determination of damages [is] to show that '[the plaintiff] had a valid claim.'" (quoting *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1273 (Fla. 2000))); *Brookins v. Goodson*, 640 So. 2d 110, 112 (Fla. 4th DCA 1994) (holding the amount or extent of damages was not determinative of whether an insured could bring a first party bad faith claim; the purpose of the allegation concerning a determination of damages was to show that "Imhof had a valid claim.") *overruled on other grounds*, *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55 (Fla. 1995).

For the reasons stated above, the Court concludes that the Bad Faith Claim is property of the estate and that the Trustee has the power to settle the claim.  The $100,000 settlement with State Farm is both fair and reasonable.  The Court approves the settlement agreement under Bankruptcy Rule 9019.[60] A separate order consistent with this Memorandum Opinion will be entered simultaneously.

DONE AND ORDERED in Orlando, Florida, December 2, 2014.

_____
KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

John Meininger, attorney for the Trustee, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

---

[60] In her motion to approve the compromise with State Farm, the Trustee asks permission to pay her special counsel, Mathew Danahy, $40,000 or 40% of the settlement. (Doc. No. 161.)  The application and related order retaining Mr. Danahy, however, only approved a 33 1/3% contingency fee or allowed $33,333.33 for attorney fees. (Doc. Nos. 113, 121, 148, and 158.)  As such, the Court will approve Mr. Danahy's application (Doc. No. 160) in the reduced amount of $33,333.33 together with expenses of $1,728.66 for a total award of $35,061.99, which the Trustee is authorized to disburse subject to disgorgement if she is unable to pay all administrative claims.